## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TWO RIVERS FARMS F-2, INC., | ) | Case No. 23-15627-KHT |
| Debtor. | ) | Chapter 11 |
| _____ | ) | Subchapter V |
| TWO RIVERS FARMS F-2, INC., | ) | |
| Plaintiff, | ) | Adv. Proc. No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| BUXMAN KWITEK & OHLSEN, P.C., | ) | |
| JDC VENTURES, LLC, SUSAN DOUKAS, | ) | |
| BRUCE ROBINSON, FRANCIS CHAN, | ) | |
| JEFFERY CHAN, FRANK GUY, | ) | |
| RAYMOND G. TINNEY TRUST, | ) | |
| NAZIM LOKHANDWALA, | ) | |
| CHARLES CURTIS, SANDRA CURTIS, | ) | |
| ELEVENTH GENERATION LP, | ) | |
| MARTHA MORRIS, | ) | |
| HUGO ZIMMERMAN, JACK GARSON, | ) | |
| MARY GARSON, CHERYL WILLIAMS, | ) | |
| GREGORY A. HARRISON, | ) | |
| STEPHEN D. BROWN, | ) | |
| SONDRA W. MARGOLIES, | ) | |
| LLOYD GRANT, | ) | |
| NORMAN L. MCCLAIN, | ) | |
| WILLIAM BOHLKEN, | ) | |
| KATHY LYNN ADAMS, | ) | |
| RICHARD STARK, JOHN R. ROGERS | ) | |
| JAMES WALKER, JAMES WILLIAMS, | ) | |
| DONALD S. DARENDINGER | ) | |
| REVOCABLE TRUST, ADAM LINN, | ) | |
| PRESLEY REED, PATRICIA REED, | ) | |
| FRANK MILLS, SHIRLEY MILLS, | ) | |
| PAUL POWELL, JOHN BLUM, | ) | |
| DOMINIK BARBALACE, | ) | |
| BELVA BARBALACE, JOHN ALESANDRO, | ) | |
| BRENDA FORWOOD, LAWRENCE CAKE, | ) | |
| KAREN CAKE, JOHN BLACK, | ) | |
| JAMES STREETT, | ) | |
| CONSTANTINE HAGEPANOS, | ) | |
| CHARLES SCHEUERMAN, | ) | |
| LISA SCHEUERMAN, TIMOTHY GILLIS, | ) | |

PATRICIA GILLIS, L.A. WALKER III,           )
LINDA WALKER, MICHAEL BERENHAUS,            )
ELEVATION FUND, LLC,                        )
MARGARET ELIZABETH CRUMBLEY,                )
KONRAD KUHN, LINDA KUHN,                    )
SLMI HOLDINGS, LLC, STANLEY MINKIN,         )
LARISA MINKIN, GEOFFREY POREMBA,            )
IRA RESOURCES, INC.,                        )
RIPSAW PARTNERS, LLC,                       )
JOSEPH R. STRANGER, GEORGE ROSCH,           )
DAVID HAWKS, TOM ELLISON,                   )
CHRISTOPHER GORDON, IRA,                    )
ROBERT STANGER,                             )
ADALYN G. FRANK IRA,                        )
THOMAS ZIEMANN IRA                          )
                         Defendants.        )
                                            )

## COMPLAINT

TWO RIVERS FARMS F-2, INC. ("Debtor"), through counsel, respectfully submits its Complaint against Buxman Kwitek & Ohlsen, P.C., and certain beneficiaries (the "Buxman Beneficiaries" as defined below) of a deed of trust issued to Buxman Kwitek & Ohlsen, P.C., as Lender's Agent and, states as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. §§157(a) & (b)(2)(A), (B), (O). This Court also has jurisdiction pursuant to 28 U.S.C. §1334.

2.      Venue in this Court is proper as the Debtor filed for relief in this District with this Court. 28 U.S.C. §§1408 & 1409.

3.      As more fully set forth below, the Debtor owns real property and water rights within the State of Colorado which are allegedly subject to the liens, encumbrances and/or interests of one or more of the Defendants.

-1-

4.      The Buxman Beneficiaries (as defined below) allegedly transacted business with the Debtor, Mr. John R. McKowen and/or Mr. Wayne Harding, concerning, among other things, solicitations for  investments in and/or loans to Mr. McKowen, Mr. Harding and their group of (then) affiliated companies including Two Rivers Water & Farming Company, and TR Capital, LLC, GrowCo, Inc. ("GrowCo") and GrowCo Partners 1, LLC ("GCP-1"), among other companies.

5.      Each of the Buxman Beneficiaries transacted business within the State of Colorado, transacted business with a Colorado company, and allegedly assert an interest in real property within the State of Colorado owned by the Debtor, such that all such persons availed themselves of the laws of the State of Colorado, they have substantial contacts with the state of Colorado or at least have minimum contacts with the State of Colorado.

## PARTIES

6.      The Debtor is a Colorado corporation located at 999 18th Street, Suite 3000, Denver, Colorado 80202.

7.      Buxman Kwitek & Ohlsen, P.C. ("BKO") is a Colorado professional corporation with its principal place of business located at 601 North Main Street, Suite 200, Pueblo, Colorado 81003.

**A.      Beneficiaries of the Buxman Deed of Trust**

8.      The "Buxman Beneficiaries" are approximately 57 persons identified as beneficiaries on that certain Deed of Trust (the "Buxman Deed of Trust") allegedly executed by the Debtor on or about November 9, 2011, in favor of Buxman, as Lender's Agent for the Holders of Certain Notes who are the persons identified on Exhibit A to said Deed of Trust, which was recorded

with the Huerfano County Clerk and Recorder on November 28, 2011 at Reception No. 392702 and again on February 17, 2012, at Reception No. 393301. *See, infra.* The Debtor allegedly issued 57 promissory notes with the total principal amount of approximately $5,527,000.00 to the Buxman Beneficiaries pre-petition. The Buxman Beneficiaries includes Buxman to the extent Buxman (or any alleged assignee) asserts any claims against the Estate.

9.     JDC Ventures, LLC is an entity whose last known principal place of business is at 5445 South Grape Lane, Greenwood Village, Colorado 80121.

10.   Susan Doukas is an individual whose last known address is 1102 Newfield Road, Gwynn Oak, Maryland 21207.

11.   Bruce Robinson is an individual whose last known address is 4331 Lake Forest Court, Finksburg, Maryland 20148.

12.   Francis Chan is an individual whose last known address is 2400 Powers Ferry Drive South East, Marietta, Georgia 30067.

13.   Jeffery Chan is an individual whose last known address is 2400 Powers Ferry Drive South East, Marietta, Georgia 30067.

14.   Frank Guy is an individual whose last known address is 3326 Glenway Drive, Kensington, Maryland 20859.

15.   Raymond G. Tinney Trust is an entity whose last known principal place of business is 444 Monroe Drive, Palo Alto, California 94306.

16.   Nazim Lokhandwala is an individual whose last known address is 7411 Paxton Road, Highlands Ranch, Colorado 80126.

17. Charles Curtis is an individual whose last known address is 902 Windsor Lane, Key West, Florida 33040.

18. Sandra Curtis is an individual whose last known address is 902 Windsor Lane, Key West, Florida 33040.

19. Eleventh Generation LP is an entity whose last known principal place of business in care of GCP-1, whose last known principal place of business is 2831 Saint Rose Parkway, Suite 200, Henderson, Nevada 89052.

20. Martha Morris is an individual whose last known address 19 Pond Lane, Bryn Mawr, Pennsylvania 19010.

21. Hugo Zimmermann is an individual whose last known address is Via Tull 7 7017, Films Dorf, Switzerland.

22. Jack Garson is an individual whose last known address is 11223 Riverview Drive, Potomac, Maryland 20854.

23. Mary Garson is an individual whose last known address is 11223 Riverview Drive, Potomac, Maryland 20854.

24. Cheryl Williams is an individual whose last known address is 812 Philadelphia Road, Joppa, Maryland 21085.

25. Gregory A. Harrison is an individual whose last known address is 16209 Kimberly Grove, Gaitherburg, Maryland 20878.

26. Stephen D. Brown is an individual whose last known address is 24 Tower Road, Lincoln, Massachusetts 01733.

27. Sondra W. Margolies is an individual whose last known address is 191 Presidential

Boulevard, Suite 912, Bala Cynwyd, Pennsylvania 19004.

28. Lloyd Grant is an individual whose last known address is 128 Belglen Way, Los Gatos, California 95032.

29. Norman L. McClain is an individual whose last known address is P.O. Box 36, Robertsdale, Pennsylvania 16674.

30. William Bohlken is an individual whose last known address is 248 Primrose Road, Burlingame, California 94010.

31. Kathy Lynn Adams is an individual whose last known address is 248 Primrose Road, Burlingame, California 94010.

32. F. Richard Stark is an individual whose last known address is 110008 Spring House Court, Potomac, Maryland 20854.

33. John R. Rogers is an individual whose last known address is 2 Perimeter Park South, Ste. 100 West, Birmingham, Alabama 35243.

34. James Walker is an individual whose last known address is 4280 Ten Oaks Drive, Dayton, Maryland 21036.

35. James Williams is an individual whose last know address is 812 Philadelphia Road, Joppa, Maryland 21085.

36. Donald S. Darendinger Revocable Trust is an entity whose last known principal place of business is at 27270 Lillegard Court, Tracy, California 95304.

37. Adam Linn is an individual whose last known address is 980 Adams Road, Winchester, Virginia 22603.

38. Presley Reed is an individual whose last known address is 375 Bellevue Drive, Boulder,

Colorado 80302.

39.   Patricia Reed is an individual whose last known address is 375 Bellevue Drive, Boulder, Colorado 80302.

40.   Frank Mills is an individual whose last known address is 548 Palo Alto Avenue, Palo Alto, California 94301.

41.   Shirley Mills is an individual whose last known address is 548 Palo Alto Avenue, Palo Alto, California 94301.

42.   Paul Powell is an individual whose last known address is 21508 Bethel Road, Tecumseh, Oklahoma 74873.

43.   John Blum is an individual whose last known address is 6 Mink Hollow Court, Owings Mills, Maryland 21117.

44.   Dominik Barbalace is an individual whose last known address is 126 Sonata Way, Centerville, Maryland 21638.

45.   Belva Barbalace is an individual whose last known address is in care of GCP-1 whose last known principal place of business is 2831 Saint Rose Parkway, Suite 200, Henderson, Nevada 89052.

46.   John Alesandro is an individual whose last known address is 15 Westgate Road, Erial, New Jersey 08081.

47.   Brenda Forwood is an individual whose last known address is 1464 Bethel Road, Garnet Valley, Pennsylvania 19060.

48.   Lawrence Cake is an individual whose last known address is 32345 Apron Way, Long Neck, Delaware 19966.

-6-

49.    Karen Cake is an individual whose last known address is 32345 Apron Way, Long Neck, Delaware 19966.

50.    John Black is an individual whose last known address is 25335 Marsh Landing Parkway, Ponte Vedra, Florida 32082.

51.    James Streett is an individual whose last known address is 5611 Williams Road, Hydes, Maryland 21082.

52.    Constantine Hagepanos is an individual whose last known address is 7909 Ardmore Avenue., Baltimore, Maryland 21234.

53.    Charles Scheuerman is an individual whose last known address is 12529 Kings Gate Drive, Kingsville, Maryland 21087.

54.    Lisa Scheuerman is an individual whose last known address is 12529 Kings Gate Drive, Kingsville, Maryland 21087.

55.    Timothy Gillis is an individual whose last known address is 8 Brandon Court, #302, Lutherville Timonium, Maryland 21093.

56.    Patricia Gillis is an individual whose last known address is 8 Brandon Court, #302, Lutherville Timonium, Maryland 21093.

57.    L.A. Walker III is an individual whose last known address is 5734 Oso Parkway, Corpus Christie, Texas 78414.

58.    Linda Walker is an individual whose last known address is 5734 Oso Parkway, Corpus Christie, Texas 78414.

59.    Michael Berenhaus is an individual whose last known address is 10648 Muirfield Drive, Potomac, Maryland 20854.

60. Elevation Fund, LLC is an entity whose last known principal place of business is 6161 South Syracuse Way, Suite 320, Greenwood Village, Colorado 80111.

61. Margaret Elizabeth Crumbley is an individual whose last known address is 1090 Wrayswood Road, Watunsville, Georgia 30677.

62. Konrad Kuhn is an individual whose last known address is 5 Water Road, Rocky Point, New York 11778.

63. Linda Kuhn is an individual whose last known address is 5 Water Road, Rocky Point, New York 11778.

64. SLMI Holdings, LLC is an entity whose last known principal place of business is at 1805 North Carson Street, #383, Carson City, Nevada 89701.

65. Stanley Minkin is an individual whose last known address is 503 Tristan Lane, Baltimore, Maryland 21208.

66. Larisa Minkin is an individual whose last known address is 503 Tristan Lane, Baltimore, Maryland 21208.

67. Geoffrey Poremba is an individual whose last known address is 20338 86th Place, Northeast, Bothell, Washington 98011.

68. IRA Resources, Inc. is an entity set up for the benefit of I Wistar Morris, IRA, whose last known principal place of business is in care of GrowCo whose last known principal place of business is 335A Josephine Street, Denver

69. Ripsaw Partners, LLC is an entity whose last known principal place of business is at Milo Tedstron, 1777 Larimer Street, Unit 1510, Denver, Colorado 80202.

70. Joseph R. Stranger is an individual whose last known address is 206 East Drive, Princeton,

West Virginia 24740.

71. George Rosch is an individual whose last known address is 5781 Cape Harbor Drive, Apartment 602, Cape Coral, Florida 33914.

72. David Hawks is an individual whose last known address is 1694 Sun Berry Court, Finksburg, Maryland 20148.

73. Tom Ellison is an individual whose last known address is P.O. Box 215 Boulder, Colorado 80306.

74. Christopher Gordon, IRA is an entity whose last known principal place of business is at 4440 Willard Avenue, Apt. 736, Chevy Chase, Maryland 20815.

75. Robert Stanger is an individual whose last known address is in care of VetaNova, Inc., 2831 Street Rose Parkway, Suite 200, Henderson, Nevada 89052.

76. Adalyn G. Frank, IRA is an entity whose last known principal place of business is at 6053 Florey Road, Hanover, Maryland 20176.

77. Charles R. Biemiller, IRA is an entity whose last known principal place of business is at 2 Perimeter Park South, Suite 100 West, Birmingham, Alabama 35243.

78. Thomas Ziemann, IRA is an entity whose last known principal place of business is at 1304 Boggs Road, Forest Hills, Maryland 21050.

## GENERAL ALLEGATIONS

79. The Debtor filed a Voluntary Petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") on December 6, 2023 ("Petition").

80. The Debtor filed its Schedules and Statement of Financial Affairs on or about December 21, 2023. The Debtor's Schedules and Statement of Financial Affairs, and all amendments

thereto, are collectively referred to herein as the "Schedules".

81. The Debtor is operating as the Debtor-in-Possession pursuant to 11 U.S.C. §1107 and §1108.

82. The Debtor is a Colorado corporation owned by Two Rivers Farms F-1, Inc. ("F-1").

83. F-1 is in turn owned by Two Rivers Water and Farming Company ("Two Rivers").

84. The Debtor owns real property and certain water rights which were obtained from a related entity The Orlando Reservoir No. 2 Company, LLC ("Orlando") who commenced a Chapter 11 bankruptcy case in July 2023. *See Case No. 23-13178-KHT.*

85. Orlando is owned by TR Capital Partners, LLC ("TR Capital") and Mr. Greg Harrington.

86. TR Capital is also owned, in part, by Two Rivers.

**A.**   **Pre-petition Acquisition of Land and Water Rights**

87. Pre-petition, the Debtor acquired land and water rights from Orlando through a series of transactions.

88. The Debtor acquired land generally described as: a Parcel of land containing the Orlando Reservoir Number Two, situated in Sections 17, 18, 19, and 20, Township 26 South, Range 66 West of the 6th P.M., in Huerfano County, Colorado ("Reservoir Parcel").

89. The Debtor also acquired certain decreed water rights from various individuals and entities, including rights from Mr. Leo Payne ("Mr. Payne"), Marksheffel-Woodman Investments, LLC ("MWI"), and Orlando.

90. The Debtor acquired additional real estate from MWI and its affiliates which are also included within the Reservoir Parcel.

    *1.    The Debtor's Acquisition of the Reservoir Parcel*

91. The Reservoir Parcel was originally acquired by Orlando via a warranty deed on or about

-10-

May 9, 2005, from Mr. Payne.

92.   On October 21, 2011, Orlando conveyed legal title to the Reservoir Parcel to the Debtor, and again on February 15, 2012, via Quit Claim Deeds.

93.   As part of the conveyance of the Reservoir Parcel to the Debtor, the Debtor agreed to take on all valid debt associated with such real property, including the debts owed to the Colorado Water Conservation Board ("CWCB").

94.   At the time of the transaction, CWCB asserted a lien against the Reservoir Parcel pursuant to a set of deeds of trust granted by the Debtor (and properly perfected) to secure a loan from the CWCB to the Debtor for funds to improve the Orlando Reservoir No. 2, among other things.

95.   The Debtor does not dispute the security interest and obligation owed to CWCB. *See, infra.*

   2.   *The Debtor's Acquisition of the Huerfano Water Rights*

96.    Orlando acquired certain decreed water rights (the "Initial Water Rights") from Mr. Payne on or about May 9, 2005, via Warranty Deed, located in Huerfano County, Colorado.

97.   These Initial Water Rights include certain rights and priority rights to the Butte Valley Ditch, storage of water in the Orlando Reservoir No. 2, the Mexican Branch Ditch, the Chitwood Ditch, the Parsons Ditch, the Weston Spring No. 1, the Weston Spring No. 2, the Weston Spring No. 4, and the Weston Spring No. 5.

98.   Orlando also acquired certain decreed water rights from MWI via a Quit Claim Deed on January 28, 2011.  These water rights are described as 3 C.F.S. No. 19 to the Robert Rice Ditch #15, based upon a decree dated March 1, 1987, which are also in Huerfano County, Colorado (the "MWI Water Rights").

-11-

99.     Orlando acquired additional water storage rights for the Orlando Reservoir No. 2 from Randall W. Case, II on or about January 28, 2011, via a Quit Claim Deed (the "Case Water Rights").

100.    The Initial Water Rights, the MWI Water Rights, and the Case Water Rights are collectively referred to hereinafter as the "Huerfano Water Rights."

101.    However, on or about January 28, 2011, Orlando conveyed some of the Huerfano Water Rights to TRW Orlando Water Assets, LLC ("TRW") via a Water Deed - Special Warranty Deed. Such water rights were re-conveyed back to the Debtor on or about September 7, 2011 via a Special Warranty Deed.

102.    On or about July 27, 2011, Orlando conveyed some of the Huerfano Water Rights to Family Ranch Holdings, LLC ("Family Ranch") via a Water Deed - Special Warranty Deed. Such water rights were re-conveyed back to Orlando on or about September 7, 2011, via a Special Warranty Deed.

103.    On October 21, 2011, TRW conveyed the Huerfano Water Rights to the Debtor via a Quit Claim Deed.

104.    On February 15, 2012, Orlando conveyed legal title in the Huerfano Water Rights to the Debtor via a "Water Deed - Quit Claim Deed."

105.    As part of the conveyance of the Huerfano Water Rights to the Debtor, the Debtor agreed to take on all valid debt associated with such real property, including the debts owed to the CWCB.

106.    At the time of the transaction, CWCB asserted a lien against the Huefano Water Rights pursuant to a set of deeds of trust granted by the Debtor (and properly perfected) to secure

-12-

a loan from the CWCB to the Debtor for funds to improve the Orlando Reservoir No. 2, among other things.

107. The Debtor does not dispute CWCB's lien on the Huerfano Water Rights. *See, infra.*

108. The above transactions describe the deeded history to the real estate and water rights. However, the Debtor's prior management and principals engaged for a purpose now unknown to the Debtor's current management and ownership.

**B.     Buxman Deed of Trust**

109. On November 9, 2011, the Debtor granted a Deed of Trust to BKO as Lender's Agent (the "Buxman Deed of Trust"). A copy of the Buxman Deed of Trust is attached hereto as **Exhibit 1** and is incorporated herein.

110. The Buxman Deed of Trust allegedly encumbers the Reservoir Parcel and the Huerfano Water Rights. *Id.*

111. The Buxman Deed of Trust allegedly secures approximately 57 promissory notes with a total principal amount of $5,527,000.00. *Id.*

112. On or about March 15, 2012, the Debtor granted a Deed of Trust to the Colorado Water Conservation Board ("CWCB"), encumbering the Reservoir Parcel and the Huerfano Water Rights to secure a loan in the principal amount of $1,184,882.00 ("CWCB Deed of Trust").

113. On or about March 13, 2012, the Debtor, Buxman, and the CWCB entered into a Subordination Agreement, whereby the Buxman Deed of Trust was subordinated to CWCB's Deed of Trust. Such Subordination Agreement was then recorded with the Clerk and Recorder of Huerfano County, Colorado.

114. The Debtor therefore asserts the Buxman Deed of Trust is junior to that of CWCB.

-13-

**C.** **The Nature of the Buxman Indebtedness**

115. Prior to 2019, Two Rivers, TR Capital and other related companies were owned and/or controlled by Mr. McKowen (as CEO) and Mr. Harding (as CFO and Treasurer).

116. Prior to 2019, Mr. John R. McKowen and Mr. Wayne Harding, were the principal officers and directors of the Debtor.  Mr. McKowen served as CEO, while Mr. Harding was the CFO.

117. Mr. McKowen and Mr. Harding reorganized ownership of their operating subsidiaries based on two functional operations, water and farming.

118. Upon information and belief, in or around the summer of 2011, Mr. McKowen and/or Mr. Harding, as the principals of the Debtor, solicited and raised approximately $5,500,000 through selling unregistered, non-exempt securities in the Debtor, specifically "Preferred F-2 Shares."

119. As part of the Preferred F-2 Shares offering, Mr. McKowen and Mr. Harding offered prospective investors in F-2 additional consideration for their investment including, common stock warrants in Two Rivers, which was another solicitation of unregistered, non-exempt securities.

120. Each investment in F-2 for the Preferred F-2 Shares was represented by a Series B Secured Convertible Participating Promissory Note (the "Series B Note"), in conjunction with a Subscription Agreement (also known as a "Purchase Agreement") between, allegedly, the Debtor and the investor.

121. As part of the Series B Notes and Subscription Agreement, each investor was offered collateral for their investment through an alleged Security Agreement and/or a Deed of Trust.

122. The Debtor believes such security took the form of the Buxman Deed of Trust, as set forth above.

123. Essentially, Mr. McKowen and Mr. Harding offered these potential investors an interest in property of the Debtor as a "back stop" to their, normally, wholly unsecured and at-risk equity investment.

124. The 2011 investment scheme perpetrated by Mr. McKowen and Mr. Harding raised a total of approximately $5,527,000.00.

125. Based upon the Debtor's records however, it is unclear whether the Debtor actually received the benefit of such funds. As set forth above, Two Rivers, Orlando and other companies were the initial buyers of the Reservoir Parcel and Huerfano Water Rights.

126. Based upon the records the Debtor has been able to retrieve, the Debtor believes the capital raised in the 2011 investment scheme was "up-streamed" to Two Rivers and/or other affiliates at the time, who then used some of the funds from the 2011 Buxman offerings to purchase the Reservoir Parcel and Huerfano Water Rights. A significant portion of the purchase price however, included stock in Two Rivers and other companies. Based upon several agreements, the Debtor believes only $1,500,000 of the 2011 Buxman funds were actually used in the purchase of the Reservoir Parcel and Huerfano Water Rights.

**D.    GrowCo Investment Scheme**

127. The 2011 investment scheme bears resemblance to a similar scheme perpetrated by the same actors between 2014 and 2019 involving another set of companies owned and controlled by Mr. McKowen and Mr. Harding, namely GrowCo, GCP-1 and other affiliates. *See Chan v. Two Rivers Water & Farming Co., et al*, Dist. Ct., City & County of Denver, Colorado, Case

No. 21CV33922.

128. Pre-petition, the Securities Commissioner for the State of Colorado, Ms. Tung Chan ("Securities Commissioner") sued GrowCo, GCP-1, Two Rivers, TR Capital, Mr. Harding, and Mr. McKowen, among others, alleging Mr. Harding and Mr. McKowen, through GrowCo, Two Rivers and TR Capital sold unregistered non-exempt securities in Colorado between 2014 and 2019 ("Commissioner Action"). *Id.*

129. The Commissioner alleged Mr. McKowen, Mr. Harding, GCP-1 and GrowCo, among others, made unlawful, if not illegal, solicitations of securities and debt between November 2014 and June of 2017. *Id., Complaint, at 9-16.*

130. In connection with these offerings, GrowCo and GCP-1, directly or indirectly, failed to, or inadequately disclosed material facts including, but not limited to, that NASD took disciplinary action against Mr. McKowen, that Mr. McKowen's prior bankruptcies and GrowCo and GCP-1 were cannabis and/or cannabis related companies such that the potential Offerings could face substantial losses if the federal government chose to enforce the Controlled Substances Act, among other federal laws, that GrowCo and GCP-1 could not have their own bank accounts because of their violations of the CSA, that Mr. McKowen was acting as an unlicensed broker-dealer receiving finder's fees and/or commissions, and, that the money collected through the Offerings was used to pay attorney fees for the 2019 GrowCo Chapter 11 bankruptcy filing. *Id.,* at 24-26.

131. All of the securities offerings by Mr. McKowen and Mr. Harding to prospective investors in 2014 through 2015 for GrowCo and GCP-1 were unregistered and failed to comply with the securities exemptions under Colorado and federal law. *Id.* at 27.

**E.**     **Satisfaction of the Buxman Notes and Deed of Trust**

132.     In or around August of 2014, Mr. Harding, as Chief Financial Officer of the Debtor and Two Rivers, made another solicitation of unregistered, non-exempt securities to all of the Buxman Beneficiaries whereby their Series B Notes and investments in the Debtor would be exchanged for Preferred membership interests in TR Capital.

133.     The terms of exchange were set forth in a Membership Interest Purchase Agreement and Exchange Agreement (collectively the "Exchange Agreements") between each Buxman Beneficiary, the Debtor, Two Rivers and TR Capital.[1]

134.     Each of the Buxman Beneficiaries were offered Preferred Units in TR Capital for the then outstanding amount of their investments and Series B Notes issued by the Debtor.  In other words, each Buxman Beneficiary would receive a similar amount of equity in TR Capital for the total outstanding amounts allegedly owed to them by the Debtor under the Series B Notes and related investment documents.

135.     Each Buxman Beneficiary would then surrender their stock warrants in Two Rivers as part of the exchange.

136.     Under these Exchange Agreements, each of the Buxman Beneficiaries agreed to, among other things, release their promissory notes from the Debtor in exchange for receiving preferred equity in TR Capital.

137.     Each Buxman Beneficiary executed an Exchange Agreement in or around August 2014.

138.     Each Buxman Beneficiary released the Debtor from any and all obligations under the Exchange Agreements, including their promissory notes from the Debtor.

---

[1]The Exchange Agreements and related documents are voluminous and contain personal identifying information, but will be produced at any trial or hearing. *See* Fed.R.Bankr.P. 9037.

139. Once the Exchange Agreements were signed by the Defendants, TR Capital issued new preferred share certificates to the Defendants for their pro-rata conversion.

140. Each Buxman Beneficiary received equity in TR Capital for their investment and/or indebtedness in the Debtor in or around August of 2014.

141. By way of example, the following documents are attached hereto and incorporated herein:

    a.    A copy of Ms. Doukas' executed Membership Interest Purchase Agreement, **Exhibit 2**;

    b.    A copy of Mr. and Ms. Cake's executed Exchange Agreement, **Exhibit 3**;

    c.    A copy of a letter dated August 6, 2014 from Mr. Harding to Mr. and Ms. Cake along with the stock certificate from TR Capital, **Exhibit 4**;

    d.    A copy of the surrendered stock certificate issued by the Debtor to the Donald S. Darendinger Revocable Trust u/a 7/3/2007, **Exhibit 5** ; and,

    e.    A copy of Dr. Brown's cancelled Series B Convertible Promissory Note issued by the Debtor and the cancelled Two Rivers Water Company's  Common Stock Purchase Warrant, collectively **Exhibit 6**.

142. Upon the consummation of all of these Exchange Agreements with the Buxman Beneficiaries, all of the indebtedness underlying the Buxman Deed of Trust was satisfied in or around the fall of 2014.

143. However, the Buxman Deed of Trust was never released.

144. The Debtor asserts there are no debts owed to any of the Buxman Beneficiaries, such that the Buxman Deed of Trust is no longer a valid instrument.

**<u>FIRST CLAIM FOR RELIEF</u>**

-18-

(Declaratory Judgment)

145.    The Debtor incorporates by this reference all prior allegations.

146.    The Debtor has a right, title, and/or interest in or to the Reservoir Parcel and/or Huerfano Water Rights. 11 U.S.C. §541(a).

147.    The Debtor's rights to the Reservoir Parcel and/or the Huerfano Water Rights are affected by the Buxman Deed of Trust, including the Buxman Beneficiaries.

148.    There exists an actual controversy as to the rights and interests of the Parties as to the Buxman Beneficiaries interest in the Reservoir Parcel and/or Huerfano Water Rights.

149.    There is a dispute as to the nature, extent, and validity of the Buxman Beneficiaries' interest in the Reservoir Parcel and/or Huerfano Water Rights pursuant to the Buxman Deed of Trust.

150.    Pursuant to 28 U.S.C. §2201 and Fed.R.Bankr.P. 7001(9), the Debtor seeks declaratory relief against the Buxman Beneficiaries concerning the nature, extent, and validity of the Buxman Beneficiaries' alleged right, title, and/or interest in or to the Reservoir Parcel and/or Huerfano Water Rights.

151.    The issuance of a declaratory judgment will settle and afford relief from uncertainty and insecurity with regards to the rights and status of the Buxman Beneficiaries' alleged right, title, and/or interest in or to the Reservoir Parcel and/or Huerfano Water Rights.

WHEREFORE, the Debtor respectfully requests this Court to enter a declaratory judgment declaring the rights of all the Parties with respect to the nature, extent, and validity of the Buxman Beneficiaries' debts and alleged right, title, and/or interest in or to the Reservoir Parcel and/or the Huerfano Water Rights, for the Debtor's attorney fees and costs as provided by law and/or

agreement and, for such other relief as the Court deems appropriate.

## SECOND CLAIM FOR RELIEF
(Quiet Title)

152.   The Debtor incorporates by this reference all prior allegations.

153.   The Debtor has a right, title, and/or interest in or to the Reservoir Parcel and/or Huerfano Water Rights. 11 U.S.C. §541(a).

154.   The Buxman Beneficiaries assert a right, title, and/or interest in or to the Reservoir Parcel and/or Huerfano Water Rights based on the Buxman Deed of Trust. *See Exh. 1.*

155.   The Buxman Beneficiaries agreed to exchange their promissory notes for Preferred Unit membership in TR Capital.

156.   TR Capital issued share certificates to all of the Buxman Beneficiaries in exchange for the Buxman Beneficiaries' release of their indebtedness/investment in the Debtor.

157.   Upon information and belief, all of the indebtedness represented by the Buxman Deed of Trust was satisfied in or around 2014 by, among other things, an exchange of the investment/indebtedness in the Debtor for equity in TR Capital.

158.   As a result of the Exchange Agreements, the Buxman Beneficiaries do not have right, title, and/or interest in the Reservoir Parcel and/or the Huerfano Water Rights.

WHEREFORE, the Debtor respectfully requests this Court to enter a judgment in its favor and against the Buxman Beneficiaries to quiet title to the Reservoir Parcel and Huerfano Water Rights, for all the Debtor's attorney's fees and costs as provided by law and/or agreement, and for such other relief as this Court deems appropriate.

## THIRD CLAIM FOR RELIEF

-20-

(Objection to Claim 11 U.S.C. §502)

159.   The Debtor incorporates by this reference all prior allegations.

160.   Out of an abundance of caution, the Debtor listed BKO as a disputed, contingent, unliquidated creditor of the Debtor.

161.   The Debtor also listed the Buxman Beneficiaries, as unsecured, disputed, contingent, unliquidated creditors of the Debtor.

162.   Several of the Defendant Beneficiaries filed proofs of claim in the Debtor's underlying bankruptcy case, including:

   a.      John Blum;
   b.      Frank Guy;
   c.      Charles Curtis;
   d.      Sandra Curtis; and
   e.      George Rosch.

163.   11 U.S.C. §502(b) provides that if an objection to a claim is made, the Court, after notice and hearing, shall determine the amount of such claim in lawful currency of the United States as of the Petition Date, and shall allow such claim in such amount, except to the extent that: (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for reason other than because such claim is Contingent or unmatured.

164.   While filing a proof of claim constitutes prima facie evidence of a claim, such presumption is rebuttable. Fed.R.Bankr.P. 3001(f); *In re Kirkland*, 572 F.3d 838 (10th Cir. 2009). If evidence rebutting a proof of claim is brought forth, the claimant must produce additional evidence to prove validity of the claim by a preponderance of the evidence. *Id.*; See *Wilson v. Broadband Wireless Int'l Corp. (In re Broadband Wireless Int'l Corp.)*, 295 B.R. 140

-21-

(10th Cir. BAP 2003) (discussing burden of proof in claims objection proceeding and noting that if a proof of claim is executed or filed improperly "it is not prima facie evidence of [the claim] and [the claimant] would have the initial burden of proving a claim exists and the amount of that claim"). A claim is not deemed filed under 11 U.S.C. §501 if such claim is scheduled as disputed, contingent, or unliquidated. 11 U.S.C. §1111(a).

165.    If a creditor fails to carry its ultimate burden in proving validity and amount of its claim, a debtor's objection should be sustained. *In re Geneva Steel Colorado.*, 260 B.R. 517 (10th BAP 2001), judgment aff'd 281 F.3d 1173 (10th Cir. 2002).

166.    As set forth above, there is a dispute as to the nature, extent, and validity of the Buxman Beneficiaries' alleged right, title, and/or interest in or to the Reservoir Parcel and/or the Huerfano Water Rights, including BKO and the above listed Buxman Beneficiaries who filed proofs of claim in the Debtor's bankruptcy case.

167.    The Debtor asserts the Buxman Beneficiaries, including BKO and the above listed Buxman Beneficiaries who filed proofs of claim, do not have any right, title, and/or interest in or to the Reservoir Parcel and/or Huerfano Water Rights.

168.    As set forth above, the Buxman Beneficiaries' indebtedness issued by the Debtor was satisfied pre-petition.

169.    One or more of the filed Buxman Beneficiary claims lacks supporting documentation and/or the documentation included fails to identify any obligation owed by the Debtor to such claimant.

170.    Pursuant to Fed.R.Bankr.P. 3001(c)(1), if a proof of claim is based upon a writing, a copy of the writing shall be filed with the proof of claim. Similarly, pursuant to Fed.R.Bankr.P.

3001(d), if a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected.

171.  When a party fails to attach supporting documentation to a claim, the burden more readily shifts to the creditor, who then bears the obligation of persuasion to establish the enforceability, amount, and perfection of an asserted, secured claim. *Agricredit Corp. v. Harrison (In re Harrison)*, 987 F. 2d 677, 680 (10th Cir.1993); *Allen v. Geneva Steel Co. (In re Geneva Steel Co.)*, 260 B.R. 517, 524 (10th Cir. BAP 2001). *See also, Caplan v. B–Line, LLC (In re Kirkland)*, 572 F.3d 838, 840-41 (10th Cir. 2009) (holding without required supporting documentation, "the burden would have improperly rested with the Trustee to disprove an unsubstantiated claim"); *see also Campbell v. Verizon Wireless S-CA (In re Campbell)*, 336 B.R. 430, 432 (9th Cir. BAP 2005) ("[A] proof of claim filed without sufficient documentation does lack prima facie validity: the claim very likely will not survive a bona fide legal or factual objection absent an adequate response by the creditor.").

172.  This Court must determine the amount, if any, are owed to the Defendants, including BKO and the Buxman Beneficiaries who filed proofs of claim, by the Debtor. 11 U.S.C. §502(b).

173.  The Court must also determine whether any of the Defendants, including BKO and the Buxman Beneficiaries who filed proofs of claim, have any right, title, and/or interest in or to the Reservoir Parcel and/or the Huerfano Water Rights. 11 U.S.C. §502(b).

WHEREFORE, the Debtor respectfully requests, pursuant to 11 U.S.C. §502(b), this Court enter judgment in favor of the Debtor and against all of the Defendants, including BKO and the Buxman Beneficiaries who filed proofs of claim, determining the amount of the Defendants' claims, if any, determining whether any of the Defendants have any right, title and/or interest in and/or to

the Reservoir Parcel and/or Huerfano Water Rights, and for such other relief as the Court deems appropriate.

## FOURTH CLAIM FOR RELIEF
(Determination of Secured Status Pursuant to 11 U.S.C. §506)

174.   The Debtor incorporates by this reference all prior allegations.

175.   Pursuant to 11 U.S.C. §506(a)(1), an allowed claim of a secured creditor secured by a lien on property in which the estate has an interest is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, and is an unsecured claim to the extent the value of such creditor's interest is less than the amount of such allowed claim.

176.   Most, if not all, of the filed Buxman Beneficiary claims assert their claims are, at least in part, secured by the Debtor's assets.

177.   As set forth above, there is a dispute nature, extent, and validity of the Buxman Deed of Trust, including the nature, extent and validity of the security interest in and lien upon the Debtor's assets including the Reservoir Parcel and the Huerfano Water Rights.

178.   To the extent the Buxman Deed of Trust is valid as against the Debtor (which is denied), and the value of the Reservoir Parcel and the Huerfano Water Rights, collectively, is less than the amount of the filed proofs of claim asserting a security interest thereon, such claims may be unsecured and/or undersecured.

179.   Pursuant to 28 U.S.C. §2201 and Fed.R.Bankr.P. 7001(9), the Debtor seeks declaratory relief against all of the Buxman Beneficiaries, including those who filed proofs of claim, as to the secured status of such alleged creditors in the underlying bankruptcy case. 11 U.S.C. §506.

180.   Similarly, the Debtor seeks declaratory relief to the extent that any of the Buxman

Beneficiaries' are secured creditors, the value of the collateral is less than the amount owed to such claims. *Id.* As a result, the Buxman Beneficiary claims' secured claims (which is disputed) should be reduced to the value of the collateral. *Id.* Any amounts over the value of the collateral must be treated as an unsecured claim. *Id.*

WHEREFORE, the Debtor respectfully requests that this Court enter a declaratory judgment declaring the rights of all of the parties with respect to the secured status of the Buxman Beneficiary claims and, to the extent that such claimants are secured creditors and the value of the collateral is less than the amount owed to such claimants, that such claims are unsecured and/or undersecured, pursuant to 11 U.S.C. §506, for the Debtor's costs and attorney's fees as provided by statute or agreement, and for such other relief this Court deems appropriate.

Dated: May 20, 2024.                             Respectfully submitted,
                                                 BUECHLER LAW OFFICE, LLC

                                                 */s/ K. Jamie Buechler*
                                                 _____
                                                 K. Jamie Buechler, #30906
                                                 *Gender Pronouns She/Her*
                                                 Jordan (Thomas) O'Connell, #59395
                                                 999 18th Street, Suite 1230-S
                                                 Denver, Colorado 80202
                                                 Tel:720-381-0045
                                                 Fax: 720-381-0382
                                                 Jamie@KJBlawoffice.com
                                                 Jordan@KJBlawoffice.com
                                                 **ATTORNEYS FOR THE DEBTOR**